Good morning. Our next case is No. 2012-7132, Cross v. Shinseki. Mr. Waghorn. Good morning, Your Honors. Andy Waghorn on behalf of JOYCE CROSS, who is the widow of the veteran Cornelius Cross. The issue in this case is whether the lower court erred by requiring an incompetent veteran to submit testimonial proof of exactly how his surgeon failed to advise him and provide informed consent for surgery in order to adjudicate a claim arising under 38 U.S.C. 1151. Well, you say he was incompetent, but there was no finding that he was incompetent. Well, that's exactly the problem here, Your Honor. The lower – the board and the lower court never addressed that issue. Well, you never raised it, did you? Well, we raised the issue of lack of informed consent, Your Honor. But you didn't raise the issue of whether he was competent. Well, the record was littered with evidence that – The answer is yes, you didn't raise it, right? We didn't raise that specific argument below, Your Honor. But as – you know, we would cite the court, the case of Forche that basically states that even though a particular argument may not have been raised below, the issue is not waived as long as the court has jurisdiction over the issue. And this court does have jurisdiction over the issue because in order to arrive at their finding that a veteran had the burden of proof to show testimonial proof of lack of informed consent before his claim could be adjudicated, the lower court basically read into the statute and the implementing regulation that requirement, which is not there. So although the court didn't specifically interpret 1151 or the implementing regulations, it impliedly interpreted those provisions by adding this requirement and interpreting it to say something it doesn't say. So the court does have jurisdiction over this issue. It was not – although a specific legal argument may not have been raised before, the issue is not waived. The court expressly – I'm trying to completely follow this jurisdictional argument. Now, is it your argument that the VA had misinterpreted its statute because it had an independent obligation to assess whether the consent was informed? The VA certainly had an independent obligation to review the consent form and to determine in this case whether informed consent was provided. And in the case of a veteran who has dementia, as relied on by the board and the court below to show that this surgery did not cause the dementia, they relied on evidence to say that he had preexisting dementia. If the lower court is going to rely on evidence of preexisting dementia to deny proximate causation, and they have an independent duty to apply the statutes and regulations that apply to the case, they can't ignore that very same evidence on the issue of whether a veteran with dementia can give informed consent. Did the board – I mean, did the veterans court say that the dementia was unchanged before and after the operation? There was no finding of fact made on that issue at all, but it's fairly clear if you look at the medical evidence that is a record. There's a progress note in August of 1996 that indicates that the veteran had trouble understanding, trouble talking, memory loss, and there was a question of whether he had a prior stroke. In November of 1996, there was another record that indicated that he met the criteria for dementia, but it's not until after the second surgery in 1998, the one at issue in this case, where the records show that he had advanced dementia and can only speak in very short sentences. And the problem here is by regulation, when a veteran is incompetent, the Veterans Administration has to obtain informed consent from an appropriate surrogate who can actually listen to the risks and benefits of the procedure, the alternatives, and determine for the veteran whether or not he's willing to consent to that procedure. That was not done in this case. Even if you get past the question of informed consent, don't you have a whole host of other problems in terms of establishing your claim? I don't believe so, Your Honor. Your Honor, if the BVA and the lower court applied Section 3.361D and required the VA to establish that it complied with its regulations on informed consent, then that would require a remand back to the lower court and back to the BVA to determine, in the first instance, whether or not they complied with their regulations. And I would submit that because this is an accrued benefits claim and the evidence is frozen at the time of the veteran's death, there's really only one thing they can look to, two things that they can look to, to make that determination. One is the medical evidence showing pre-existing dementia at the time of the 1998 surgery. And two is the consent form itself, which is signed by the veteran. It's not signed by a surrogate. And there just simply is no finding in the record that the veteran was competent to provide informed consent at the time of the 1998 surgery. The problem is there's no evidence that he wasn't competent either, isn't there? Well, again, I was… You used the word dementia to describe his pre-existing condition. I don't recall, and tell me if I'm wrong, that there's any medical evidence that he was suffering from dementia before the operation. Oh, absolutely. There is, Your Honor.  Record, page 46, it's a November 6, 1996 progress note, and the examining physician there states precisely the veteran meets the criteria for dementia. Where's that on the page? 46, Your Honor. Yeah, I know, but where on the page does it say that? Oh, I'm sorry. Yeah, this is in handwritten. Is that the second line from the bottom? Yes. What does that say, CT scan head? And the assessment, like in the middle of the page where it says A, colon, 1, reflux, esophagitis, 2, probable dementia, so that's the clinical assessment at the time, and this is in 1996, November 96, at least a year and a half before the surgery had issued in this case. But there are also observation notes somewhere in here where, at the time of the signing, they indicate that he's competent to sign. There is, the only thing that the board relied on is the absence of any evidence that there was any problem with the informed consent discussion. There's no finding in the record at the time that they gave. Are there not observation notes that discuss his ability to hear, for example? It says that he doesn't have a hearing aid, but he can hear. I recall reading that in there. Yes, yes, but it doesn't indicate that he is competent. It doesn't indicate that he's not suffering from dementia. The nursing notes only indicate that he basically... Heard and understood. The general language that this was explained to him and he had no questions. But there is no finding. Where is that in the record? Because I don't recall it being exactly what you're saying. Maybe your opposing counsel can help you out. Do you know what page that is? Page 38. Thank you. Well, 37 doesn't say anything. Verbalizes understanding and perception of procedure. It doesn't say he didn't ask any questions. It says he verbalizes understanding and perception. Right. Right. But that doesn't... That's the only indication that that is relevant to is that he... It also says his family was present. I highlighted that. This is a preoperative assessment on 5 March 1998. The consent form was signed on February 13, 1998. So that was well... His family may have been there immediately prior to surgery and the veteran may not have had any questions immediately prior to surgery during the pre-op period time. But when they had him sign the consent form three weeks earlier, there's nothing to indicate that he was competent at that time. And the consent form is at 48 of the record. Did the board address his pre-surgery mental state? I'm sorry, Your Honor, I didn't hear you. Did the board address his pre-surgery mental state? They did. The only way that they mentioned it is they used that evidence of pre-existing dementia to show that this surgery in 1998 wasn't the sole cause... Could you show me where the board talks about this? Yes. Okay. Well, if you're not able to find it, you can do it on your rebuttal. Okay. The court did acknowledge that there was some pre-surgery dementia and some post-surgery dementia, and in fact it was aggravated or appeared to have been aggravated. Correct? That's what we were claiming. We were claiming that this claim could be shown by aggravation, Your Honor. And the court accepted that proposition but said, Right. But see, there's two claims under 1151. You can establish it by trying to show that there was negligent care and treatment or that there was lack of informed consent. So we are alleging that there was no showing of... I know, but that was part of your problem is that you focused on the first prong. So you were trying to show that it was much worse after the surgery and not that bad before the surgery, and then you get to the informed consent prong, and now you're saying, Well, really, he was pretty bad before the surgery. Well, really, what our argument is is that it needed to be addressed by the VA and the lower court. Even if I didn't raise the argument specifically, the issue is before the lower court and the regulation and statute is before the lower court. And it requires a finding of... So you're saying that even if you've got a regulation with four prongs and it says they have to satisfy everyone, for instance, or you can show a failure under anyone, that as long as you cite to the regulation, every single prong is before the board and the court? No, what I'm saying, Your Honor, is if we raise the issue of lack of informed consent, which we clearly did, and the lower court acknowledges that fact, then the lower court has an obligation to review the statute and the regulations that are pertinent to that informed consent issue. And one of those regulations requires in every case that the VA determine whether or not they complied with their own regulations. And they did not do that in this case because we had a veteran with dementia. No finding was made at the time he signed the consent form that whether or not he was competent to sign it. There's no evidence that they made that determination. Lower court should have seen that and corrected it. The issue of informed consent was before that. Is it possible to, even if we agree with you that there's an independent obligation by the VA to assess the propriety of the informed consent, is it possible to say that any failure in that regard was harmless because the medical records establish that though he had some speech problems, might have had some aphasia problems, that he understood what was going on around him and he was capable of giving that informed consent? Well, I don't know how the court could reach that conclusion. I understand Judge Wallach's questions about the questioning immediately prior to surgery. But when the time he was given his informed consent three weeks earlier, there's just no finding, no medical conclusion by the primary care physician or the surgeon who was going to perform the surgery as to whether or not he was competent to give his informed consent. All we have is the signed consent. In any event, it's a fact issue. We can't make fact findings as a way of finding harmless error. Do you have authority on that? Well, I think that... It's a helpful question. Yes, I don't think you do, Your Honor. I think that the board has to make the initial fact finding because they're charged with that responsibility. Okay. Thank you. We'll give you two minutes for rebuttal. Thank you. Mr. Sweet. Thank you, Your Honor, and good morning again. May it please the court, I'll start with the capacity to consent argument. Ms. Cross waived that argument by failing to raise it before the Veterans Court. Her argument that the Veterans Court was on notice of the issue because there was some indication in the record that Ms. Cross suffers from some level of dementia does not save her because it's not the Veterans Court's responsibility to call through the record attempting to identify claims for the veterans. But did she at least raise the question of a lack of informed consent? She raised the informed consent issue in terms of whether or not there was an adequate disclosure. That's an entirely separate issue than whether the veteran had the capacity to consent because it requires an independent factual determination as to the veteran's state of mind. By failing to raise that issue below, Ms. Cross denied the Veterans Court the opportunity to make that factual determination. What did the board say about the pre-surgery state of mind? It did not address, except in general terms, the issue in connection with her capacity to consent, but it did make some findings that she suffered from some prior dementia, I believe, some level of dementia. But if you look at that... Where is that, what page is that finding on? Pardon me, Your Honor. And that was in connection with their analysis of the causation. Is that right? Yes. I think it's in the rejection of medical evidence. It rejected the... What page? I'm sorry, I'm looking at page 14. Page 14. We are on page 14. I'm sorry, Your Honor, hold on. I guess, I'm sorry, if you look at page 9, under the background, it refers to the preoperative note.     And it discusses his progression. So it doesn't actually discuss dementia. Correct. But there was evidence in the record of preoperative dementia, right? Yes. But if you look at that record on page 46, which is what Ms. Cross relies on, if you flip over to the next page, on page 47, it indicates that this is on the preoperative note. The second line, beginning at the end, it indicates patient understood the procedure and willingly signed the consent form. So even that on record, even though it notes that... Whoa, whoa, whoa, whoa. But that doesn't say that he make any statement about his competency. The standard for whether he's competent to consent is whether he understands the procedure and whether he's able to communicate his health care decisions. So even that record indicates that his level of dementia was not so severe that it prevented him from understanding or communicating his health treatment decisions. If this issue is properly before us, there is perhaps a conflicting record then on whether he was competent to consent before the operation, right? I don't believe that there's any evidence. The only piece of information he points to indicates that the patient understood and was able to communicate. Well, that's one doctor, but you have another one on page 46 saying probable dementia, which is a note that predates the operation, right? Yes, that note predates the operation, but on the same notes, it indicates that he doesn't satisfy the standard. All that indicates that he has dementia. It says nothing about the level of that dementia and whether it was sufficiently severe that it prevented him from understanding and communicating his health treatment decisions. Is page 47 the page after 46 in the notes? I believe it is, Your Honor. And I apologize, I didn't put together this portion of the appendix, but I believe it is. Even in the board's decision, they note that he had several incidents of getting lost and difficulty putting things together, dating all the way back to 1994, and that his symptoms had been progressive from that point forward. So we know that at least for four years before his surgery, he was having progressive symptoms of dementia. That's correct, Your Honor. But the best evidence as to his level of dementia at the time of the surgery in 1998 are the pages 37 and 38 that we point to, which indicated that he had no cognitive barriers, that he understood his procedure and his condition, and that he had no communicative barriers. No cognitive barriers? Where does it say that? If you look on page 38, under patient education assessment, the second line down says cognitive barriers, and there's a handwritten note next to it that says no problems. So despite evidence of four years of cognitive problems and the Board relying on prior cognitive problems to conclude that his post-surgery problems were not all caused by negligence, this one statement is enough to support the factual conclusion that there were no cognitive problems as of that point in time? None of those prior opinions address the question of how his dementia impacted his capacity to consent. It looks to me, counsel, like what we're discussing is a question of what within the law constitutes dementia at a level sufficient to make or not make consent to an operation, which I assume, because I don't see any briefing on it, is analogous perhaps to capacity to enter into a will, which people with dementia can do as long as they can identify the natural objects of their affection. But we haven't had a brief. Do you have anything to say about what that standard is? Well, I think that's correct by its very nature. Dementia, the mental state improves and deteriorates within a period of time. So just the fact that he has dementia doesn't necessarily mean that he wasn't able to consent. Indeed, as Judge Wallach noted... It's a tough sell, isn't it? No, Your Honor, not at all. The record shows he had some dementia, but he was able to understand and appreciate the nature and consequences of his health treatment decisions and to communicate them. Indeed, that very note on page 46 indicates that while he had probable dementia, he also was capable of consenting at that time. Let me give you a hypothetical. Suppose we had a different record here and that it said pre-op, he suffers from severe dementia, okay? And the Veterans Council fails to raise that question at the board or at the Veterans Court. Is that error for... But he does raise the overall informed consent question. It's raised here. Is that a barrier? Is there a waiver under those circumstances? If the record's clear that he suffered from severe dementia, that the board and the Veterans Court can ignore that? Yes, he has to raise the issue in order not to waive it unless it's within the four-sheet exception, which is not the case here. Let me ask you about the regulation. It took me a while to completely understand what was being argued here, but as I understand it, what he's saying is that the VA has an independent obligation to determine that the consent was informed. And it seems like we're sort of after the fact, looking back to see whether or not they could have made that determination had they undertaken to do so. And so my question to you is, under the regulations interpreted properly, how is the VA supposed to make that determination? Your Honor, under the regulations, the VA does not have an obligation to determine the capacity of consent. Under 3.361 D.1.2, it merely has an obligation to substantially comply with Section 17.32. But it doesn't say that the... Substantial compliance is adequate, but they didn't even make the determination as to substantial compliance, did they? Nothing requires the VA to make a determination as to substantial compliance. And that's what his argument is, that to determine whether there was informed consent, the VA will consider whether the health care provider substantially complied with the requirements of 17.32. So did the VA ever undertake that consideration? Yes, I think as the Veterans Court opinion shows, it found that the Board properly concluded that there was substantial compliance with 17.32. Why does the VA then go through this pre-op assessment and determine that the patient's competent to consent if they're not required to do that? I think that's the whole point of having the informed consent document and having these preoperative assessments is precisely to document that a patient... Why? But why did they do it? Oh, why? To show that they've substantially complied with 17.32, which in particular Section D of 17.32 requires adequate documentation of the informed consent process. Now, isn't that inconsistent with your waiver argument? I mean, much like we do with district courts, if one argues a waiver but the court didn't enforce that waiver and went ahead and decided the issue anyway, then the waiver argument falls away. So don't you have the same problem here? In order to comply with their assessment of 17.32, they had to look at whether or not it was capable. The VA documented his capability. And then the question is whether Ms. Cross preserved that claim that they didn't by raising it before the Veterans Court, which Ms. Cross did not do. If your honors have no further questions, I respectfully request that this court affirm to the extent it has jurisdiction. Thank you. The requirement to determine if the VA substantially complied with its requirement on informed consent is found at 3.361 D.1.2. To determine whether there was informed consent, the VA will consider whether the health care provider substantially complied with the requirements of 17.32 of this chapter, which includes the requirement to get a surrogate in the case where a veteran is incompetent. Section E of 17.32 provides the standard that Judge Wallach asked. A nurse can't make this determination. It's got to be a physician. It's got to be a physician with primary decision-making. Practitioner who has the primary responsibility for the patient has to determine whether the patient lacks decision-making capacity. Well, but on 48 in the record, that was signed by a physician. Isn't that not correct? Well, let's go through it. On page 38 of the record, where it says, no CNA, no cognitive barriers, that's signed by a nurse. The RN signature is right there on 3398. I would also note that it does say his attention span and memory is limited in that same form. But your consent form is 48, is it not? Yes. I'm going to go to that now, Your Honor. Even if we were to remand for further analysis of this, what other evidence would they have other than these same documents that say no cognitive barriers? I mean, don't you end up in the same place? No. These same documents don't say the determination of whether somebody  is suffering from dementia or not. Only a doctor is. And the doctor that did address the issue before this surgery is the doctor who signed the progress note on 11-696 at page 46 of the record.   Only a doctor is. His medical assessment was that the veteran suffered from probable dementia. Is that the same doctor who signed the form on 48? No. All right. Thank you, Mr. Waghorn. Thank you, Your Honor. The case is submitted. We thank both counsels.